619 So.2d 1256 (1993)
Marion CLINE, Plaintiff-Appellee/Appellant,
v.
PACIFIC MARINE INSURANCE COMPANY, Defendant-Appellant/Appellee.
No. 92-1251.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*1257 Donald R. Wilson, Jena, for Marion R. Cline.
Frank A. Flynn, Lafayette, for Pacific Marine Ins. Co., et al.
Andrew E. Schaffer, Alexandria, for Louisiana Ins. Guar. Ass'n.
Before DOMENGEAUX, C.J., and YELVERTON and SAUNDERS, JJ.
YELVERTON, Judge.
This appeal arises from a judgment finding Marion Cline was an employee of Cline Timber Company and not an independent contractor of Hunt Plywood Company, Inc. at the time of his accident and was therefore not entitled to worker's compensation benefits from Hunt's insurer, Lumbermen's Underwriting Alliance.
The facts are not in dispute. Cline was injured in January 1985 while driving a tractor skidding logs when the tractor reared up and he fell off. As a result of this accident, he sustained injuries to his left shoulder and back. On the day of his accident, Cline was selling his logs to Hunt at its mill in Pollock.
Hunt required the loggers who hauled to it to have worker's compensation, general liability and auto insurance. If a logger did not have insurance, Hunt had a group policy with Pacific Marine Insurance Company (Pac Mar) for vendors who sold to Hunt. Cline got this coverage. The premium for this policy was withheld from the weekly paycheck that the loggers received for their logs. After his accident, Cline filed a petition for worker's compensation benefits against Pac Mar. Pac Mar paid worker's compensation and medical benefits to Cline until its insolvency in 1989. Thereafter, the Louisiana Insurance Guaranty Association (LIGA) assumed Pac Mar's obligation under the policy. LIGA was substituted as a defendant for Pac Mar.
Cline later filed another amending petition for worker's compensation against Hunt and its worker's compensation insurance carrier, Lumbermen's. Hunt and Lumbermen's filed a third party demand against LIGA for indemnification and LIGA filed a cross-claim against Hunt and Lumbermen's.
The trial was bifurcated and on March 25, 1991, only the liability issues were tried. The trial court found that Cline was an employee of Cline Timber Company at the time of the accident and the Pac Mar policy *1258 was the policy in effect at the time of his accident. It also found that neither Hunt nor Lumbermen's ever offered worker's compensation coverage to Cline. LIGA appeals this judgment. It also claims the trial court erred in assessing all costs against LIGA.

LIABILITY
The meaning ascribed to the term "independent contractor" in the Worker's Compensation Law is found in La.R.S. 23:1021(6), which reads as follows:
`Independent contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the worktime of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.
The factual issue is whether Cline is an independent contractor who spent a substantial part of his work time in manual labor carrying out the terms of a contract with Hunt, or whether he was merely a vendor who sold logs to Hunt. The trial court found that Cline was an employee of Cline Timber Company and a vendor of Hunt. We disagree.
First, Cline was not an employee of Cline Lumber Company. He was Cline Lumber Company. It was a sole proprietorship.
Second, his sale of timber to Hunt did not take him out of coverage. This same issue has been discussed on many occasions by our supreme court. We will mention two illustrative cases. In Hart v. Richardson, 272 So.2d 316 (La.1973), the situation involved a pulpwood hauler who hauled a specified type of wood to a pulpwood buyer. The hauler had hauled wood only to that buyer for two years. When the buyer paid the hauler, he deducted stumpage, sums to be applied to the hauler's indebtedness for things sold to the hauler, social security, unemployment taxes and a charge for the use of a loader. There was also a deduction for liability insurance for the truck. The hauler was cutting wood on his sister-in-law's land when his employee was injured. The issue was whether the corporate wood buyer was liable to the injured person for worker's compensation.
The court in Hart recognized that the Worker's Compensation Act was not designed to impose liability upon those whose only relationship with an injured person was that of purchaser or vendee. The statute was designed to cover employees. Independent contractors were expressly covered if a substantial part of their work in carrying out the terms of the contract was spent in manual labor. La.R.S. 23:1021(6). The court also stated that there was no reference in the act to an exclusion from coverage because there existed elements of a vendor-vendee relationship between the injured workman and the one sought to be held as an employer. The court then went on to hold that if all the other elements required by the act were present, such as manual labor for a specified recompense for a specified result, or employment by a contractor undertaking work which was part of the trade, business or occupation of the principal, and the injured workman was performing a necessary and indispensable activity which was part of the business operation of the one sought to be held as "employer," the mere fact that elements of sale were present in the relationship would not defeat recovery. The court held that if the workman was an independent contractor doing manual labor, or an employee of a contractor doing work which was part of the principal's business, or an employee of the defendant, the act provided coverage, if the other legal requirements were met. The court emphasized that it had never held that vendor-vendee and principal-contractor were mutually exclusive relationships.
The supreme court again faced a similar issue in Woodard v. Southern Casualty Insurance Co., 305 So.2d 528 (La.1974), in *1259 which a producer filed suit for worker's compensation benefits against the pulpwood dealer to whom the producer sold wood. Woodard had exclusively produced wood for the dealer but was theoretically free to sell the pulpwood he produced elsewhere. The supreme court held that Woodard was not a seller producing for the open market but an independent contractor performing primarily manual work in performance of his contract with the dealer to cut, haul, and deliver pulpwood for the dealer's business needs.
The facts in the present case are quite similar. Hunt operated a plywood mill in Pollock. Cline owned Cline Timber Company and also owned his own equipment. He was an independent logging subcontractor. He began doing business with Hunt around 1981. He and other independent contractors like him supplied the logs which Hunt used to make plywood. Although free to sell his logs elsewhere, in the two years before his accident Cline had sold all his logs to Hunt. Hunt did not control how Cline acquired the logs, but Hunt specified to Cline the length and width of the logs it required for its business. Hunt also had an agreed price with Cline for the logs he brought in. Cline was paid by the thousand on a weekly basis by Hunt when he delivered logs to Hunt which had been almost every week for the previous two years. Cline spent most of his time performing the manual labor of cutting, skidding, loading and hauling logs with the help of his employees. At the time of his accident, he was driving the tractor skidding logs.
Gary Crawford, the secretary-treasurer controller for Hunt, testified that Hunt required loggers like Cline to have worker's compensation insurance because liability could come back on Hunt. If Cline did not have worker's compensation coverage, he could purchase worker's compensation insurance on his own or through a policy issued by Pac Mar. In order to pay for the insurance the premium was deducted from the weekly checks paid to Cline. Severance tax was also deducted from his weekly checks and remitted to the State of Louisiana on Hunt's own tax return.
Also, cutting and hauling logs was an essential part of Hunt's business in operating a plywood plant. Crawford testified that in order for Hunt to operate its mill it had to enter into contracts with people like Cline to have the logs cut and brought to the mill for manufacture into plywood. The mere fact that Cline owned his own business and sold logs to Hunt does not mean that this was strictly a vendor-vendee relationship.
Cline performed a substantial amount of the manual labor in cutting and hauling the logs for a specified result at a specified price to Hunt. Hunt only controlled the length and width of the logs and not how Cline procured these logs. Without people like Cline, Hunt could not operate. Also, the fact that Hunt required Cline to have his own worker's compensation coverage did not relieve Hunt of its liability under the Worker's Compensation Act to covered independent contractors. Clearly, under these circumstances, the Worker's Compensation Law intended that Cline be a covered independent contractor under La.R.S. 23:1021(6), performing work which was an essential part of Hunt's plywood business.

COVERAGE
Hunt had a policy of worker's compensation insurance issued by Lumbermen's Underwriting Alliance.
The trial judge found that Lumbermen's policy of insurance did not offer coverage for a logger classification. This is true. However, the policy issued by Lumbermen's provided:
Coverage AWorkmen's Compensation: To pay promptly when due all compensation and other benefits required of the Insured by the workmen's compensation law.
Additionally, the policy further provided:
16. Terms of Policy Conformed to StatuteCoverage A: Terms of this policy which are in conflict with the provisions of the workmen's compensation law are hereby amended to conform to such law.
*1260 La.R.S. 23:1162 requires that every worker's compensation insurance policy cover the entire liability of the employer. In this case, for worker's compensation purposes, Hunt is considered to be the employer.
La.R.S. 23:1162 is a "full coverage" statute by reasons of which the liability of the insurer is co-extensive with that of the insured employer under the Louisiana Worker's Compensation Law. Under Section 1162, the worker is provided protection, superior to the insurance contract rights between the employer and its insurer, and the right to recovery overrides any limitation if the employee is, as a factual matter, entitled to recover. Vallier v. Oilfield Const. Co., Inc., 483 So.2d 212 (La. App. 3rd Cir.), writ denied, 486 So.2d 734 (La.1986).
Since Hunt is liable to Cline for worker's compensation as a covered independent contractor, under the terms of the policy and La.R.S. 23:1162, Lumbermen's policy provides coverage to Cline.
LIGA next claims that it is not obligated to pay any worker's compensation benefits to Cline until all benefits due Cline under the Lumbermen's policy are exhausted. The trial court held otherwise. We agree with LIGA.
La.R.S. 22:1386(1) at the time of this accident, prior to its amendment in 1990, stated:
§ 1386. Nonduplication of recovery
(1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.
The supreme court has held that the purpose of this provision is to prevent double recovery. Hickerson v. Protective Nat. Ins. Co., 383 So.2d 377 (La.1980); Senac v. Sandefer, 418 So.2d 543 (La.1982). In Hickerson LIGA had become the obligor under a policy of automobile insurance. LIGA argued that the plaintiff had to first exhaust her uninsured motorist coverage before recovering against LIGA. The supreme court held that the "Nonduplication" provision was designed to apply to ordinary insurance coverage and not to uninsured motorist coverage. (The amendment to the statute by La.Acts 1990, No. 130, § 1, overruled this case. See McMahon v. Louisiana Ins. Guar. Ass'n, 596 So.2d 1384 (La. App. 1st Cir.), writ denied, 604 So.2d 970 (La.1992)).
In Senac the court held that double recovery does not result where the claimant, who received worker's compensation benefits, also is the recipient of a stipulated judgment for general damages.
Our present case is different from the above cases because it involves a situation in which both of the insurers provided the same type of coverage: worker's compensation. Allowing Cline to recover against LIGA and Lumbermen's would result in double recovery. Therefore, we find under La.R.S. 22:1386, Cline must first exhaust his right to worker's compensation benefits against Lumbermen's. We also find that LIGA is entitled to recover any amounts it has paid to Cline which would have been Lumbermen's responsibility under its policy. Under La.R.S. 22:1386, as it existed before its amendment in 1990, LIGA is entitled to a reduction for any amount it becomes responsible for by the amount of recovery under the Lumbermen's policy.
For the above reasons the judgment of the trial court dismissing the claims of Cline and LIGA against Hunt and Lumbermen's is reversed. Judgment is rendered in favor of Marion Cline on his third amending and supplemental petition, and against Hunt Plywood Company, Inc., and Lumbermen's Underwriting Alliance, for all worker's compensation benefits as a result of the injury sustained by Marion Cline on January 23, 1985. Judgment is further rendered against Hunt and Lumbermen's holding that they are solidarily liable to Cline for those benefits until the benefits due and payable under the Lumbermen's *1261 policy and the law are exhausted. Judgment is further rendered in favor of LIGA, as plaintiff in cross-claim, and against Hunt and Lumbermen's, ordering them to restore all benefits previously paid to Cline by LIGA. Judgment is finally rendered ordering Hunt and Lumbermen's to pay all costs to date of this proceeding below and on appeal.
The case is remanded to the trial court for further proceedings.
REVERSED AND RENDERED; REMANDED.